UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:                                                    Chapter 7

Kyle McEvoy,                                              Case No. 8-25-70177-las

                              Debtor.

---------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER DISALLOWING AND EXPUNGING PROOF OF CLAIM NO. 8-1

I.      Introduction

Before the Court is the motion of Kyle McEvoy (the "Debtor") objecting to the allowance of proof of claim no. 8-1 filed by Zackery Forrest Riley ("Riley") asserting a general unsecured claim in an "unknown" amount for "Money Loaned/Services Provided". [Doc. Nos. 75, 76.] The Court has reviewed the parties' submissions carefully and conducted an evidentiary hearing on February 5, 2026. For the reasons set forth on the record at the evidentiary hearing, the Court sustained the Debtor's objection to Riley's proof of claim no. 8-1, disallowed and expunged the claim, and "so ordered" the record. This Memorandum Decision and Order is consistent with and explains further the bases for the Court's ruling at the February 5 evidentiary hearing.

II.     Jurisdiction

The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986 (Weinstein, C.J.), as amended by Order dated December 5, 2012 (Amon, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) that the Court may hear and decide. 28 U.S.C. § 157(b)(1).

1

III.    Background and Procedural History[1]

In or about October 2019, Riley and the Debtor became business partners with each holding a 50% interest in Collaborative People, Inc. ("Collaborative People"). Collaborative People provided certain administrative and billing services with respect to the Debtor's former therapy business, Collaborative Therapy Mental Health Counseling, P.C. ("Collaborative Therapy"). The business relationship ended in July or August of 2024. In September of 2024, Riley commenced an action in New York State court against the Debtor, Collaborative People and Collaborative Therapy.

The Debtor terminated all the employees of Collaborative Therapy on January 10, 2025, asserting that it did not have the funds to meet payroll and other expenses. Five days later, on January 15, 2025, the Debtor individually filed a petition for relief under chapter 7. One day later, on January 16, 2025, the Debtor commenced a new business under the name Kyle McEvoy Mental Health Counseling PC. On April 28, 2025, Riley filed a complaint objecting to the Debtor's discharge or, in the alternative, the dischargeability of debt allegedly owed to him by the Debtor under 11 U.S.C. §§ 727 and 523, respectively.

On May 28, 2025, Riley filed proof of claim no. 8-1 ("POC No. 8-1") asserting a general unsecured claim in an "unknown" amount for "Money Loaned/Services Provided". There is no documentation attached to POC No. 8-1 and, on the Claims Register, Riley included a comment, "Unable to calculate claim without judicial intervention."

On December 2, 2025, the Debtor filed a motion [Doc. No. 75] and memorandum of law [Doc. No. 76] (together, the "Claim Objection Motion") seeking an order pursuant to Bankruptcy Rule 3001(f) disallowing and expunging POC No. 8-1 on the basis that the proof of claim does not set forth the date of the loan, the reason for the loan or the amount repaid,

---

[1] The relevant facts are not in dispute, unless otherwise noted.

if any, and that the proof of claim does not describe the nature of the services or when the services were allegedly rendered. Furthermore, the Debtor asserted that POC No. 8-1 fails to attach any documents as required by Bankruptcy Rule 3001(c) to support the claim. The Debtor argued that Riley never loaned any monies to him nor provided him with any services. The Notice of Hearing on the Claim Objection Motion set forth a hearing date of January 6, 2026 at 10:00 a.m. and an objection deadline of December 31, 2025. [Doc. No. 75.] On January 2, 2026, Marc Pergament, Esq. ("Pergament") of Weinberg, Gross & Pergament LLP, the Debtor's counsel, filed a Certificate of No Objection certifying that the Claim Objection Motion was filed and served in a timely fashion, the deadline to file opposition has passed and no opposition has been filed or served upon the Debtor or filed on the Court's docket and that he was aware of no informal objection.

At 8:02 a.m. on the morning of January 6, 2026, Riley emailed Chambers and Pergament opposition to the Claim Objection Motion and physically submitted the opposition papers to the Clerk's Office at 10:58 a.m., which were docketed as Document No. 82. Pergament appeared at the January 6 hearing[2] on behalf of the Debtor and Riley appeared *pro se*. At the hearing, Riley raised the arguments set forth in Document No. 82 emphasizing that he wasn't properly served with the Claim Objection Motion as required by Bankruptcy Rule 3007(a)(2).

Bankruptcy Rule 3007(a)(2) requires that an objection to a claim and a notice of the objection "must be served by mail on the person the claim holder most recently designated to receive notices on the claim holder's original or latest amended proof of claim, at the address so indicated". Fed. R. Bankr. P. 3007(a)(2). Riley noted that the affidavit of service filed by Pergament indicates that Riley was only served electronically by email on December 2, 2025

---

[2] The transcript of the January 6, 2026 hearing shall hereinafter be referenced as "Jan. 6 Tr.". [Doc. No. 88.]

3

[Doc. No. 77] and not by mail as required by Bankruptcy Rule 3007(a)(2). Accordingly, Riley asserted that Pergament failed to properly serve him with the Claim Objection Motion and that Pergament and his firm knew Riley disputed the relief sought and/or had communicated his opposition before Pergament filed the Certification of No Objection.

At the hearing, Pergament represented that substantially all communication between him and his firm with Riley has been by email during pendency of the bankruptcy case. Jan. 6 Tr. 7:4-6. Although Pergament thought his office served Riley with a copy of the Claim Objection Motion by first class mail, he acknowledged that he has no way of substantiating that this was indeed the case. Jan. 6 Tr. 7:1-4. Pergament represented that he did not receive any communication from Riley since a hearing on November 18, 2025 other than an email request on January 5, 2026 at approximately 1:05 p.m. seeking an adjournment of the Claim Objection Motion. Jan. 6 Tr. 31:6-8; 35:5-6. The record shows that there was no communication from Riley to Pergament or his office other than filings made with the New York State court. Jan. 6 Tr. 33:24-25, 34:1-6. Riley copied Pergament on communications directed to state court counsel for Collaborative Therapy and Collaborative People regarding the ongoing state court litigation. Jan. 6 Tr. 32:23-25. Pergament further represented that he was not involved in the state court litigation because continuation of that litigation as against the Debtor was stayed pursuant to 11 U.S.C. § 362(a). Jan. 6 Tr. 31:22-25; 32:7-10; 34:6-7.

For his part, Riley acknowledged receiving the Claim Objection Motion by email on December 2, Jan. 6. Tr. 10:16-17, although he did not learn of the Claim Objection Motion until sometime between December 2 and December 14 when he checked the Court's case docket on PACER. Jan. 6 Tr. 14:12-24; 15:2-6. Although Riley was fully aware of the Claim Objection Motion, Jan. 6 Tr. 17:14-16, he did not file opposition until the morning of the January 6 hearing.

Seeing no prejudice to either party and no evidence of bad faith intent by Pergament and his firm in failing to serve Riley by first class mail, the Court adjourned the January 6 hearing on the Claim Objection Motion to allow Riley an opportunity to formally file opposition to the Claim Objection Motion for purposes of judicial economy and efficiency. The Court saw no purpose in having Pergament re-serve and re-notice the Claim Objection Motion when it was clear from the record that Riley had received and saw the Claim Objection Motion. As the Court noted at the January 6 hearing, the procedural issues with service have been addressed and the Court was adjourning the hearing on the Claim Objection Motion at which time the Court will solely address the merits. Jan. 6 Tr. 41:7-14.

Riley submitted that his opposition to the Claim Objection Motion was embodied in Document No. 82 and that no further written opposition would be filed. Jan. 6 Tr. 41:24-42:5. Accordingly, the Court directed Pergament to serve his reply on Riley by January 16, 2026 and the Court scheduled an evidentiary hearing on the Claim Objection Motion for February 5, 2026.

Pergament filed and served his reply on January 16, 2026. [Doc. Nos. 84, 85.] The Court held the evidentiary hearing on the Claim Objection Motion on February 5, 2026 at which Riley testified under oath and was cross-examined by Pergament. The Court carefully considered the Claim Objection Motion, Riley's opposition and Riley's sworn testimony on the merits. Based upon all the pleadings and the record made at the February 5, 2026 evidentiary hearing, the Court found that Riley's POC No. 8-1 must be disallowed and expunged in its entirety.

IV.    Discussion

A. Legal Standards

1.    *Pro Se* Pleadings

5

As an initial matter, *pro se* pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 299, 403 (2d Cir. 2013) (internal quotation marks omitted). "However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."" *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 309-10 (S.D.N.Y. 2015) (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)); see also *Iwachiw v. N.Y.C. Bd. of Educ.*, 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002) ("pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal quotations omitted).

Thus, while the Court can liberally construe the contents of Riley's POC No. 8-1 to assert a claim against the bankruptcy estate, whether Riley actually has a prepetition claim against the Debtor individually and thus, against the bankruptcy estate, requires a factual and legal determination.

### 2. *Allowance of Claims*

Under chapter 7, only a holder of a claim, defined under 11 U.S.C. § 101(5), that is allowed may receive a distribution from the bankruptcy estate. 11 U.S.C. § 726(a). A "claim" is defined in the Bankruptcy Code, in relevant part, as "**right to payment**, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, continent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A) (emphasis added).

A claim or interest, for which a proof of claim is filed, is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). "A proof of claim signed and filed in accordance with these [Bankruptcy Rules] is prima facie evidence of the claim's validity and amount." Fed. R. Bankr. P. 3001(f); see also *In re Residential Capital, LLC*, 501 B.R. 531, 538 (Bankr. S.D.N.Y.

6

2013). Bankruptcy Rule 3001(c)(1) provides, in pertinent part, "when a claim . . . is based on a writing, a copy of the writing shall be filed with the proof of claim." Fed. R. Bankr. P. 3001(c)(1). The claimant must allege facts sufficient to support the claim and attach supporting documentation to a proof of claim. *In re Aiolova*, No. 11-10503, 2013 Bankr. LEXIS 4504, at *5-6 (Bankr. S.D.N.Y. Oct. 29, 2013). "If a proof of claim is not supported by the requisite documentation, it is not presumed to be *prima facie* valid." *Id.*, 2013 Bankr. LEXIS 4504, at *7. "Failure to attach the documentation required by Rule 3001 will result in the loss of the *prima facie* validity of the claim." *In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010). Courts in the Second Circuit have disallowed claims based upon insufficient documentation to support the claim. *Id.*, at 118-9 (collecting cases). The documentary support is necessary to "enable the debtor or trustee to evaluate the claim's amount and validity and to challenge portions of the claim that may be inaccurate." *In re Live Primary LLC*, 626 B.R. 171, 189 (Bankr. S.D.N.Y. 2021).

"The burden of proof for claims brought in the bankruptcy court under section 502(a) rests on different parties at different times. . . . [A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward." *Residential Capital LLC*, 501 B.R. at 538 (quoting *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir. 1992)). "The claim will be prima facie valid, if the averments in the filed claim meets this standard of sufficiency." *In re Brown*, 615 B.R. 725, 738 (Bankr. S.D.N.Y. 2020) (internal quotations omitted), *aff'd*, No. 1:20-cv-03943 (MKV), 2021 WL 510157 (S.D.N.Y. Feb. 11, 2021). "Federal pleading standards apply when assessing the validity of a proof of claim. Accordingly, a claimant must allege enough facts to state a claim for relief that is plausible on its face." *In re Residential Capital LLC*, Case No. 12-12020, 2015 WL 2375979, at *6 (Bankr. S.D.N.Y. May 15, 2015) (internal citation and quotations omitted).

7

"Although '[claims] drafted by *pro se* claimants] are to be construed liberally, [ ] but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with a fair understanding of what the plaintiff is complaining about and ... whether there is a legal basis for recovery.'" *In re Residential Capital, LLC*, 523 B.R. 24, 41 (Bankr. S.D.N.Y. 20143) (quoting *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013)); see also *Iwachiw v. N.Y.C. Bd. of Elections*, 126  Fed. App'x 27, 29 (2d Cir. 2005).

"The burden then shifts to the objector to rebut the presumption of the prima facie validity of the claim." *Brown I*, at 738. The party objecting to the proof of claim has the burden of going forward with sufficient evidence (i) to rebut the validity or amount of the claim asserted or (ii) to show the claim should be disallowed. *Aiolova*, 2013 Bankr. LEXIS 4504, at *6; *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 540 (S.D.N.Y. 2001). "By producing 'evidence equal in force to the prima facie case,' an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to 'prove by a preponderance of the evidence that under applicable law the claim should be allowed.'" *In re Residential Capital, LLC*, 523 B.R. 24, 39 (Bankr. S.D.N.Y. 2014) (quoting *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074(RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013)); see also *In re Rockefeller Center Properties*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000) ("Once an objectant offers sufficient evidence to overcome the prima facie validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim."). "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden of persuade the [judge] of the fact's existence." *Metro. Stevedore*

*Co. v. Rambo*, 521 U.S .121, 137 n.9 (1997) (quoting *Concrete Pipe & Products of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)).

"The ultimate burden of proof, however, always lies with the claimant." *In re Taranto,* No. 10-76041, 2012 Bankr. LEXIS 1320, at *18 (Bankr. E.D.N.Y. Mar. 27, 2012); *Primavera Familienstifung*, 130 F. Supp. 2d at 540. Additonally, '[a]s the finder of fact, the Court is entitled to make credibility of findings of the witnesses as the testimony." *Merck Eprova AG v. Gnosis, S.p.A*, 901 F. Supp. 2d 436, 448 (S.D.N.Y 2012), *aff'd*, 760 F.3d. 247 (2d Cir. 2014).

Here, Riley timely filed POC No. 8-1 and the proof of claim was deemed allowed pursuant to 11 U.S.C. § 502(a), unless a party in interest objects. POC No. 8-1 would be prima facie valid as to validity and amount if it complied with the Bankruptcy Rules.

The Debtor filed an objection on December 8, 2025 arguing that POC No. 8-1 is not entitled to prima facie validity as to the basis and the amount of the claim as there are no documents attached to the proof of claim that provides factual support for Riley's claim. POC No. 8-1 asserts a claim for "money loaned/services provided" in an "unknown" amount but Riley failed to attach any loan documents describing the amount loaned, the date(s) the money was loaned, and the terms and conditions, if any, of the loan(s), including the repayment terms, maturity date, and interest rate, if any. Similarly, Riley did not attach any service or employment contract demonstrating what services were rendered to the Debtor. POC No. 8-1 is devoid of any information and factual details that permits the Court, the bankruptcy estate or the Debtor to assess the validity and accuracy of Riley's claim. Indeed, POC No. 8-1 does not even set forth an amount owed but rather states that the claim is for "unknown amount".  Thus, based upon the insufficient documentation supporting POC No. 8-1, the Court cannot find that the filing of POC No. 8-1 constitutes prima facie validity of that claim.

Thus, the burden shifted to Riley to come forward with evidence to support his claim by preponderance of the evidence. Given Riley's *pro se* status, the Court provided Riley with the opportunity to provide such documentation at the evidentiary hearing scheduled for February 5, 2026.[3] Assuming Riley did not see the Claim Objection Motion until mid-December of 2025, when he opened his emails, Riley had more than a month to gather and provide actual documentation to the Court. At no time did Riley produce any documentation, such as contracts, agreements, or even bank statements, to support his claim that he loaned money to the Debtor individually.

The Court considered Riley's testimony, under oath, at the evidentiary hearing where Riley admitted there is no loan agreement in writing between him and the Debtor under which Riley personally agreed to loan a certain amount of money to the Debtor personally. Feb. 5 Tr. 9:15-19.  Riley admitted there is also no promissory note signed by the Debtor acknowledging that Riley personally loaned him money or that he was personally obligated to repay Riley. *Id.* 10:20-24.

Riley asserted that there were conversations between him and the Debtor where they agreed to take funds from their retirement accounts and put them into a joint bank account in 2020. *Id.* 10:12-15; 11:3-5. Riley was a signatory to the joint bank account. *Id.* 15:8-11. Riley testified that "[a]ll of [the parties'] expenses, income, everything, went into that one joint account." *Id.* 14:21-23. When questioned about the date of the loan, the amount of the loan, the terms of repayment, the maturity date and whether there were any interests or fees, Riley initially stated that he needed judicial intervention to calculate the amount owed. Riley asserts that all the bank statements went to the Debtor and he is unable to get the statements from Capital One. *Id.* 16:20.

---

[3] The transcript of the February 5, 2026 evidentiary hearing shall hereinafter be referenced as "Feb. 5 Tr.". [Doc. No. 91.]

10

Not once during this bankruptcy case, including the discovery period in the adversary proceeding commenced by Riley objecting to the Debtor's discharge and dischargeability of debt, and the period since Riley received the Claim Objection Motion did Riley seek the bank statements from the Debtor, especially when Riley was aware that one of the Debtor's grounds for objecting to POC No. 8-1 was the lack of documentation. At no point did Riley seek judicial intervention from this Court by filing a motion to compel the production of documents in the bankruptcy case or in the adversary proceeding. Notwithstanding the lack of bank statements, as the Court noted at the evidentiary hearing, Riley should at least have personal knowledge of the actual amounts loaned and repayment terms and other information regarding the facts and circumstances of any loans to the Debtor individually loans without the need for discovery or judicial intervention. *Id.* 12:6-10; 14:13-19. As the Court noted, it has no evidence to support whether Riley's contribution to the joint account was a loan and not a gift or an agreement by both sides to contribute equally to the payment of household expenses. *Id.* 13:21-24.

Riley offered that he withdrew money from his 401(k) in 2024 and put it in the joint account but Riley could not provide any concrete evidence of the amount or any promise by the Debtor individually to repay Riley individually. *Id.* 18: 9-12l 19:3-4. To the extent Riley claims he has text messages, Riley has not provided evidence of those text messages. 16:15-18.

As for Riley's assertion that he has a claim for services provided, Riley concedes that he does not have any written agreement or contract that details the services Riley individually provided to the Debtor individually for which the Debtor was obligated to pay Riley. *Id.* 19:9-16; 24:13-16. He admits that he does not have any invoices or invoice statements. *Id.* 19:17-22; 20:9-15. Riley contends that there was a deferment of his payroll for seven months. *Id.* 21-22. However, the deferment of salary for services rendered and not

11

paid related to the obligation of Collaborative People, *Id.* 22:7-11; 23:21-25, and Riley confirmed that he did not render any services to the Debtor for which the Debtor was personally obligated to pay for those services, *Id.* 22:15-18.

Based upon the lack of any documentary evidence and testimonial evidence presented at the February 5, 2026 hearing, the Court finds that Riley is unable to satisfy his burden of proof in demonstrating that he personally has a "right to payment" and, thus a "claim" against the Debtor individually for "moneys loan/services rendered." Whether Riley has a claim against Collaborative People and Collaborative Therapy for monies loan or services rendered to them is the subject of ongoing state court litigation and is not before this Court.

## CONCLUSION

Accordingly, based upon the foregoing, the Debtor's motion is granted and the Debtor's objection to POC No. 8-1 is sustained. POC No. 8-1 is disallowed and the Clerk's Office is directed to expunge No. POC 8-1 from the Claims Register.

So Ordered.

**Dated: July 30, 2026**
**Central Islip, New York**



_____
**Louis A. Scarcella**
**United States Bankruptcy Judge**

12